The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

INGRAHAM, P. J., McLAUGHLIN, CLARKE and DOWLING, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellants to abide event.

---

In the Matter of the Application of THE CITY OF NEW YORK, etc., Appellant, Relative to Acquiring Right and Title to and Possession of the Wharfage Rights, etc., to Piers Old Nos. 16 and 17, East River, etc., for the Improvement of the Water Front of the City of New York on the East River, etc.

JAMES E. WARD & COMPANY, Respondent.

First Department, May 6, 1910.

**Eminent domain — condemnation of wharfage rights, city of New York — charter construed — procedure necessary to revoke shedding license.**

As section 844 of the charter of the city of New York, as amended, provides that where a permit to place a shed on a pier pursuant to section 1 of chapter 249 of the Laws of 1875, known as the Shedding Act, has been granted and acted upon, the license shall not be revoked by the commissioner of docks without the consent in writing of the mayor and of the commissioners of the sinking fund after a hearing, such license can be revoked only in the manner prescribed.

Hence, although an original shedding license provided that the shed was to be removed when so ordered free from all claims against the city consequent upon such removal, a mere notice by the commissioner of docks revoking the

license without the consent of the mayor and the commissioners of the sinking fund is ineffective, and where the city acquires the wharfage rights by condemnation the owner is entitled to compensation for the sheds taken.

APPEAL by the petitioner, The City of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of December, 1909, in so far as said order confirms the report of commissioners of estimate and assessment awarding certain damages to the respondent.

*Theodore Connoly*, for the appellant.

*Edmund L. Baylies*, for the respondent.

SCOTT, J.:

The city of New York appeals from an order in this proceeding in so far as it confirms the report of the commissioners of estimate and assessment awarding to James E. Ward & Co., a corporation, certain sums of money as damages for taking an iron shed and a wooden shed erected by the said corporation on Pier Old No. 17, East river. No question is made as to the values placed upon these sheds, the only question raised being whether the respondent is entitled to any compensation at all. The pier itself was concededly private property, of which the respondent had been for many years the lessee, its latest lease from the owners having been made on March 26, 1902, for a term of five years, unless sooner terminated in consequence of the taking possession thereof by the city of New York. The respondent had erected the sheds in question before the execution of said lease. They were erected under permits granted by the department of docks under the provisions of section 1 of chapter 249 of the Laws of 1875, well known as the Shedding Act. The first permit, which covered the erection of the wooden shed, was granted on June 6, 1877. It granted permission to James E. Ward & Co., lessees, to erect a shed in accordance with plans to be approved by the chief engineer of the department, "and to be removed when so ordered by this Board or its successors, free of all claim whatsoever against the corporation, consequent upon such removal." The second permit, under which the iron shed was built, was issued August 24, 1888, and granted permission " to extend

from present wooden shed, about one hundred and seventeen feet westerly, an iron shed." The words contained in the permit of 1877 and quoted above were not contained in the permit of 1888. On March 3, 1905, the commissioner of docks served a notice upon respondent informing it " that any and all permits heretofore granted you for the erection or maintenance of sheds or other struc-tures upon Piers old 16 and 17, and upon the bulkhead between said piers are hereby revoked, to take effect immediately." By the same notice the respondent was directed to proceed at once with the removal of said sheds and structures and to complete such removal on or before April 15, 1905. The respondent was further advised that in the event of failure to remove said sheds and structures before the specified date they would be deemed to have been abandoned by the respondent and would revert to and become the property of the city of New York. The respondent did not remove the sheds and structures and they were on the pier when possession thereof was taken by the city. This appeal presents the same question, although in a slightly different form, that has been much discussed as to the power of the dock department to qualify a permit issued under the Shedding Act, so as to provide for a revocation thereof, and of the rights created thereunder, by attaching to the permit a condition that such permit and rights may be revoked at the pleasure of the city, for the stipulation quoted above from the permit of 1877 is in effect nothing more than a stipulation that the right to maintain the structure, granted by the permit, may be revoked at the pleasure of the department of docks, or when it shall require such removal. The subject was discussed at length in *Matter of City of New York, Pier No. 15* (95 App. Div. 501; 113 id. 903; affd., 185 N. Y. 607), wherein it was held, in effect, that the Legislature had conferred upon the dock department power only to authorize the construction of sheds, but had not conferred the power to revoke such permits, or to qualify them by a stipulation for revocation. This was followed in *Matter of City of New York, Piers Old Nos. 19 & 20* (117 App. Div. 553). In *Matter of City of New York, Pier Old No. 11, East River* (124 App. Div. 465; affd., 192 N. Y. 539), upon which the appellant much relies, there was present not only a permit containing a proviso for revocation, but a distinct contract on the part of the licensee that if the pier

should be taken by the city of New York no additional item of value "shall be claimed or allowed by reason of the erection of a shed on said pier, and that no additional item of value shall be claimed or allowed beyond the value of the pier if no shed had been erected thereon." It was considered that the granting of the permit, which the commissioner of docks might, in his discretion, have refused, constituted a sufficient consideration for the special contract on the part of the licensee, and that the claimant was bound by the terms of that contract. In the present case no such special agreement is to be found, and only as to the permit of 1877 for the wooden pier is there any attempt to impose a condition looking to a revocation. The mere acceptance of a permit containing an unauthorized condition was not equivalent to a contract to abide by the condition. Whatever doubt may have been entertained heretofore as to the power of the city to revoke such a permit, the Legislature has now sought to resolve by section 844 of the Greater New York charter (Laws of 1901, chap. 466; Laws of 1897, chap. 378), which re-enacted section 772 of the Consolidation Act (Laws of 1882, chap. 410, as amd. by Laws of 1895, chap. 1045). In this section as it now stands provision is made for the revocation of shedding permits in the following terms: "When such license or authority has been granted, and has been acted upon, it shall not be revoked by said commissioner [of docks] without the consent in writing of the mayor and of the commissioners of the sinking fund, after due hearing of such licensee." It is not necessary now to consider whether this interpolation into the statute conferred upon the city the right to revoke without compensation a permit not theretofore revocable and under which valuable rights had been acquired. At all events it prescribes the only manner in which such permits as are revocable might after the passage of the act be lawfully revoked. No such action was taken in the present case, and, therefore, even if the condition attached to the permit of 1877 was valid and made the permit a revocable one, it was never revoked, and the action of the commissioner in attempting to revoke it was ineffectual. The consequence is that when the city took possession of the pier and the structures thereon the latter remained lawful structures erected and *maintained* under a valid and unrevoked permit. They were the property of the respondent,

and upon the plainest principles their owner was entitled to compensation for their taking.

The order appealed from must be affirmed, with ten dollars costs and disbursements.

INGRAHAM, P. J., McLAUGHLIN, CLARKE and DOWLING, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.